VOZZCOM, INC., a Florida
corporation, Plaintiff,

v.

GREAT AMERICAN INSURANCE
COMPANY OF NEW YORK d/b/a
Great American Insurance, a foreign
profit corporation, Defendant.

Case No. 09–60922–CIV.

United States District Court,
S.D. Florida.

Sept. 18, 2009.

Jonathan Benjamin Lewis, Paul Octavio Lopez, Tripp Scott, Fort Lauderdale, FL, for Plaintiff.

Gary I. Khutorsky, Litchfield Cavo, Ft. Lauderdale, FL, for Defendant.

## ORDER

CECILIA M. ALTONAGA, District Judge.

THIS CAUSE came before the Court on Cross–Motions for Summary Judgment filed by Plaintiff, Vozzcom, Inc. ("Vozzcom") [D.E. 22]; and Defendant, Great American Insurance Company ("Great American") [D.E. 21]. The Court has carefully considered the parties' written submissions and applicable law.

## I. BACKGROUND

This case arises from a dispute over insurance coverage. Plaintiff, Vozzcom, was issued an employment practices liability policy by Beazley Insurance Company ("Beazley"). (*See* Great American's Motion for Summary Judgment (*"Great American's Mot."*) at 3).[1] This policy includes an endorsement covering defense costs incurred by Vozzcom in lawsuits by its employees for violations of wage and hour laws. (See Order Granting and Part and Denying in Part Motions for Summary Judgment ("Order on Summary Judgment") [D.E. 58], *Vozzcom v. Beazley Ins. Co.* (*"Vozzcom I"*), Case No. 08–62044–Civ–Altonaga).[2] The policy period ran from January 1, 2007 through January 1, 2008.

On June 4, 2007, a former Vozzcom employee, Claudio Teixeira ("Teixeira"), filed a lawsuit against Vozzcom. Teixeira had been employed by Vozzcom from approximately November 2006 until April 2007, performing cable installation and related services for Vozzcom. In his lawsuit, Teixeira claimed that during his employment with Vozzcom, Vozzcom engaged in violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* Beazley secured defense counsel for Vozzcom and paid Vozzcom's legal bills defending the *Teixeira* claim.

The following year, rather than renew its policy with Beazley, Vozzcom obtained a similar employment practices liability policy from Great American. The Great American policy had a coverage period from January 1, 2008 through December 31, 2008.

On January 17, 2008, another former Vozzcom employee, Francisco DaSilva ("DaSilva"), filed suit against Vozzcom alleging FLSA violations. DaSilva worked for Vozzcom between September 2006 and April 2007, and, like Teixeira, had performed cable installation and related services.

Vozzcom notified Beazley about the *DaSilva* claim, seeking coverage for the defense of the lawsuit. Beazley denied coverage on the ground that the DaSilva claim was commenced after the expiration of the Beazley policy period. Vozzcom then notified Great American of the claim, again seeking coverage for the defense of the claim. Great American denied coverage on the ground that the claim "arose" during the Beazley coverage period.

The policy issued to Vozzcom by Great American contains certain relevant provisions:

### Section I.   Insuring Agreements

A.   The **Insurer** shall pay on behalf of the **Insured Persons** all **Loss** which the **Insured Persons** shall be legally obligated to pay as a result of a Claim (including an **Employment Practices Claim** or a **Securities Claim**) first made against the **Insured Persons** during the **Policy Period** or the **Discovery Period** for a **Wrongful Act**, except for any **Loss** which the **Company** actually pays as indemnification.

B.   The **Insurer** shall pay on behalf of the **Company** all **Loss** which the **Insured Persons** shall be legally obligated to pay as a result of a **Claim** (including an **Employment Practices Claim** or a **Securities Claim**) first

---

1.   The parties agree no material facts are in dispute in this case, and Vozzcom has adopted the statement of undisputed facts contained in Great American's Motion. (*See* Vozzcom's Motion for Summary Judgment (*"Vozzcom's Mot."*) at 2).

2.   Much of the relevant factual background from *Vozzcom I*, a suit against Beazley and Great American, is contained in the Court's Order on Summary Judgment in *Vozzcom I*, and is repeated here without citations to the Order.

made against the **Insured Persons** during the **Policy Period** or the **Discovery Period** for a **Wrongful Act,** but only to the extent the **Company** is required or permitted by law to indemnify the **Insured Persons.**

\* \* \*

A. "**Claim**" shall mean:

(1) a written demand for monetary or non-monetary relief made against any **Insured** and reported to the **Insurer** pursuant to Section VIII. A.(1); or

(2) a civil, criminal, administrative or arbitration proceeding made against any **Insured** seeking monetary or non-monetary relief and commenced by the service of a complaint or similar pleading, the return of an indictment, or the receipt or filing of notices of charges or similar document, including any proceeding initiated against any **Insured** before the Equal Employment Opportunity Commission or any similar governmental body.

\* \* \*

O. "**Related Wrongful Acts**" shall mean **Wrongful Acts** which are logically or causally connected by reason of any common fact, circumstance, situation, transaction, casualty, event or decision.

\* \* \*

R. "**Wrongful Act**" shall mean:

(1) any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty, or **Employment Practices Wrongful Act,** by any **Insured Person** in their capacity with the **Company;**

(2) any actual or alleged act, omission, error, misstatement, misleading statement, neglect or breach of duty by the **Insured** Entity, but only

with respect to Insuring Agreement I.C;. . . .

\* \* \*

## Section IV.   Exclusions

The **Insurer** shall not be liable to make any payment for *Loss* in connection with any *Claim* made against any **Insured:**

\* \* \*

B. based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act** or **Related Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice or **Claim** given under any other policy of which this Policy is a renewal or replacement;

C. based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any prior and/or pending civil, criminal, administrative or investigative proceeding involving the **Company** and/or and **Insured Persons** as of the date stated in Item 7 of the Declarations, or any fact, circumstance or situation underlying or alleged in such proceeding;. . . .

\* \* \*

## AMENDMENT TO SECTION VI. RETENTION

It is understood and agreed that Section VI. B. of the Policy is hereby deleted and replaced with the following:

Section VI.B.

More than one **Claim** involving the same **Wrongful Act** or **Related Wrongful Acts** of one or more **Insureds** shall be considered a single **Claim.** All such **Claims** constituting a single **Claim** shall be deemed to have been made on the earlier of the following dates: (1) the

earliest date on which any such **Claim** was first made; or (2) the earliest date on which any such **Wrongful Act** or **Related Wrongful Act** was reported under this Policy or any other policy providing similar coverage.

(*Great American Policy* [D.E. 21–8] ) (all emphasis appearing in the original).

After both Beazley and Great American denied coverage, Vozzcom retained counsel and defended the *DaSilva* claim at considerable expense. Vozzcom then filed suit against Beazley and Great American seeking a declaratory judgment as to each insurer's obligations under their respective policies, as well as a claim for breach of contract against both insurers. (*Vozzcom I* ). Both Beazley and Great American moved for summary judgment, and Vozzcom filed a cross-motion for summary judgment against both Defendants. The Court granted summary judgment in favor of Vozzcom as to Beazley, and against Vozzcom as to Great American.

On January 5, 2009, while *Vozzcom I* was pending, Vozzcom was sued by another former employee, Richard Elliot ("*Elliot* "), also for alleged FLSA violations ("Elliot"). (*See* Great American's Mot. at 4–5). At the time the *Elliot* action was filed, counsel for plaintiff filed a "Notice of Refiled or Similar Action." (*See id.* at 5). The Notice stated that the claims in *Elliot* are similar to the claims in the DaSilva action. (*See id.*). The complaint in *Elliot* alleged that Elliot was employed by Vozzcom as a non-exempt hourly or piece rate worker performing the duties of a cable technician from January 2006 until approximately July 2006. (*See id.*). The allegations in the *Elliot* complaint are virtually identical to those in the *Teixeira* and *DaSilva* lawsuits. (*See id.*).

Vozzcom sought coverage for the *Elliot* claim from Great American, and Great American denied coverage on the basis that the *Elliot* claim was related to the

earlier claims, and thus fell outside Great American's coverage. (*See id.*). Vozzcom filed this suit for declaratory relief against Great American (*Vozzcom II* ), seeking a determination that the *Elliot* claim is covered under the Great American policy. Vozzcom and Great American each now move for summary judgment.

## II.  LEGAL STANDARD

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In making this assessment, the Court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir.1997), and "must resolve all reasonable doubts about the facts in favor of the non movant." *United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am.,* 894 F.2d 1555, 1558 (11th Cir.1990).

"By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248,

106 S.Ct. 2505. Likewise, a dispute about a material fact is a "genuine" issue "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"For factual issues to be considered genuine, they must have a real basis in the record … mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England,* 432 F.3d 1321, 1326 (11th Cir.2005) (citations omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. In those cases, there is no genuine issue of material fact "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323, 106 S.Ct. 2548.

### III. ANALYSIS

Great American raises five principal arguments in support of summary judgment, three of which ((3), (4), (5)) are subsumed under the first argument: (1) the policy does not afford coverage for the *Elliot* claim; (2) this action is barred by the doctrines of collateral estoppel and res judicata; (3) the *Elliot* claim was not first made during the policy period; (4) the *Elliot* claim is excluded under the prior notice exclusion (Exclusion B) of the policy; and (5) the *Elliot* claim is excluded under the prior litigation exclusion (Exclusion C) of the policy. In support of its Cross–Motion, Vozzcom argues (1) the action is not barred by collateral estoppel; (2) the Retention Amendment does not alter the date the *Elliot* claim was "first made;" and (3) Great American's prior notice and prior litigations exclusions do not preclude coverage for *Elliot.* The parties agree that no facts are in dispute, and despite the listing of "issues," the only necessary question to address is whether the *Elliot* claim is covered under the Great American policy. The answer to that question hinges upon whether the *Elliot* claim is "related," in accordance with the policy language and restrictions, to the *Teixeira* and *DaSilva* claims.

"Under Florida law,[3] an insurance policy is treated like a contract, and therefore ordinary contract principles govern the interpretation and construction of such a policy. As with all contracts, the interpretation of an insurance contract is a question of law to be determined by the court." *Fabricant v. Kemper Independence Ins. Co.,* 474 F.Supp.2d 1328, 1330 (S.D.Fla. 2007) (citing *Graber v. Clarendon Nat'l Ins. Co.,* 819 So.2d 840, 842 (Fla. 4th DCA 2002)). "Florida courts have said again and again that insurance contracts must be construed in accordance with the plain language of the policy." *Siegle v. Progressive Consumers Ins. Co.,* 819 So.2d 732, 735 (Fla.2002). Furthermore, "[a] court should read an insurance policy as a whole, and endeavor to give each provision its full meaning and operative effect." *Anderson v. Auto–Owners Ins. Co.,* 172 F.3d 767, 769 (11th Cir.1999) (citing *Dahl–Eimers v. Mutual of Omaha Life Ins. Co.,* 986 F.2d 1379, 1381 (11th Cir.1993)).

---

**3.** The parties agree Florida law applies to construction of the policy.

Great American's policy with Vozzcom is a "claims made" policy. The Florida Supreme Court has explained,

Claims-made or discovery policies are essentially *reporting* policies. If the claim is reported to the insurer during the policy period, then the carrier is legally obligated to pay.... If a court were to allow an extension of reporting time after the end of the policy period, such is tantamount to an *extension* of coverage to the insured gratis, something for which the insurer has not bargained.

\* \* \*

As one commentator has noted:

An underwriter who is secure in the fact that claims will not arise under the subject policy ... after its termination or expiration can underwrite a risk and compute premiums with greater certainty. The insurer can establish his reserves without having to consider the possibilities of inflation beyond the policy period, upward-spiralling jury awards, or later changes in the definition and application of negligence.

*Gulf Ins. Co. v. Dolan, Fertig and Curtis*, 433 So.2d 512, 515–16 (Fla.1983) (emphasis in original) (citation omitted). *See also Ameriwood Indus. Int'l Corp. v. American Cas. Co.*, 840 F.Supp. 1143, 1148–1149 (W.D.Mich.1993) (" 'Claims made' " insurance policies ... are intended by insurers to avoid the hazard of an indefinite future: Once the policy period has expired, the book can be closed on everything except then-pending claims.... [A]n insurer incurs a risk with this kind of policy: liability for a claim that has been brewing and was ripe to erupt before the policy period, but is asserted only after the policy period begins.) (internal citations and quotations omitted).

■ As previously quoted, Section VLB of the Great American policy, as modified by Endorsement No. 8, contains a specific provision regarding multiple claims involving the same "wrongful act" or "related wrongful acts." More than one claim involving the same or related wrongful acts is considered a single claim. (*See Great American Policy* [D.E. 21–8] at 23). And claims constituting a single claim are "made" on the earlier of the date on which any claim was first made or the earliest date on which the wrongful act or related wrongful act was reported. (*See id.*).

■ "The relatedness of the claims must be considered in the context of the type of insurance at issue." *Pantropic Power Prods., Inc. v. Fireman's Fund Ins. Co.*, 141 F.Supp.2d 1366, 1371 (S.D.Fla. 2001) (finding because acts of retaliation and negligence shared temporal proximity, involved same individuals, and the later acts occurred as a consequence of prior acts of harassment, related claims were shown to exist). And in considering whether two acts of negligence are related so that notice of the first act constitutes timely notification of both acts, the Florida courts consider whether there is a causal connection between the acts, and whether the errors complained of lead to the same injury. *See Paradigm Ins. Co. v. P & C Ins. Systems, Inc.*, 747 So.2d 1040, 1042–43 (Fla. 3d DCA 2000) (citations omitted); *Eagle Am. Ins. Co. v. Nichols*, 814 So.2d 1083, 1087 (Fla. 4th DCA 2002). Acts are not considered "related" if they arise out of separate factual circumstances and give rise to separate causes of action. *Paradigm*, 747 So.2d at 1042 (citing *Kopelowitz v. Home Ins. Co.*, 977 F.Supp. 1179, 1188 (S.D.Fla.1997)).

■ As recently explained,

[A] common thread running here views "relatedness" as a concept encompassing both logical and causal connections, *Continental Cas. Co. v. Wendt*, 205 F.3d 1258 (11th Cir.2000), an assessment

which typically involves consideration of whether the acts in question are connected by time, place, opportunity, pattern, and perhaps most importantly, by method or modus operandi, *See e.g. Brown v. National Union Ins. Co. of Pittsburgh, Pa.* 2004 WL 292158 (D.Minn.2004). Hence, courts analyzing the "relatedness" of claims in situations involving similar policy language consider, among other factors, whether the parties are the same, whether the claims all arise from the same transactions, whether the "wrongful acts" are contemporaneous, and whether there is a common scheme or plan underlying the acts.

This approach does not require exact factual overlap, or even identical legal causes of action, but rather focuses simply on whether the claims are logically linked by a "sufficient factual nexus." *See e.g. Zahler v. Twin City Fire Insurance Co.,* 2006 WL 846352 (S.D.N.Y. 2006) (finding interrelation even where underlying claims were substantively distinct—securities fraud and breach of fiduciary duty); *Zunenshine v. Executive Risk Indemnity, Inc.* 1998 WL 483475 (S.D.N.Y.1998), *aff'd* 182 F.3d 902 (2d Cir.1999) (finding interrelation between negligent misrepresentation and securities fraud claims involving distinct communication mediums-private and public disclosures).

*Capital Growth Financial LLC v. Quanta Specialty Lines Ins. Co.,* 2008 WL 2949492, at *4 (S.D.Fla. July 30, 2008). In *Wendt,* the Eleventh Circuit, construing Florida law, stated the word "related" is to be afforded its plain meaning. 205 F.3d at 1262. "The words 'relate' or 'related' are commonly understood terms in everyday usage. They are defined in the dictionary as meaning a 'logical or causal connection between' two events." *Id.* (citing Webster's Third New International Dictionary (1981)). If claims are considered "related claims," the only coverage available is that

which was available under the policy in effect at the time the first claim is deemed to have been made. *Federal Ins. Co. v. Surujon,* 2008 WL 2949438, at *5 (S.D.Fla. July 29, 2008) (finding that because a claim related to an earlier related wrongful act, the claim was not covered under the current claims made policy).

In *Vozzcom I,* I found the *Teixeira* and *DaSilva* claims were related, reasoning as follows:

> In this case, Teixeira was employed by Vozzcom from approximately November 2006 through April 2007. DaSilva was employed by Vozzcom from September 2006 through April 2007. Teixeira was employed as a cable installer, as was DaSilva. Both employees claimed that Vozzcom failed to pay overtime wages for hours worked in excess of forty hours per week. The factual and temporal circumstances of the two claims are closely related....

(*Order on Summary Judgment* at 13). Under the plain language of the later-issued Great American policy, the *DaSilva* claim was not a covered claim:

> Under the Great American policy, then, the Dasilva claim was made when the Teixeira lawsuit was filed. The Teixeira lawsuit was filed in August 2007, long before Great American's policy came into effect. The DaSilva claim is therefore outside of the coverage period of Great American's policy according to the express language of the policy.

(*Id.* at 16).

In the instant dispute, Vozzcom argues that the *Elliot* claim is not related to the *Teixeira* and *DaSilva* claims. Vozzcom states, "despite Great American's self-serving characterization, there is virtually no factual overlap between the *Elliot* claim and either of the previous suits against Vozzcom." (*Vozzcom's* Mot. at 1). Vozzcom further asserts:

Because Great American successfully avoided coverage for the *Dasilva* claim, it now seeks to strain its policy language even further to deny coverage for a claim filed nearly one year after the *Dasilva* and Teixera lawsuits-a claim filed by a different employee which arises out of a completely distinct set of facts.

(*Id.* at 4). Vozzcom argues that "[r]ather than draw attention to the dearth of underlying facts which the lawsuits have in common, Great American focuses on the similarity of the *allegations* set forth in each of the form complaints filed in these matters," and insists that "the underlying events giving rise to the *Elliot* Claim are separate and distinct from those at issue in *Teixeira or Dasilva.*" (*Id.* at 5) (emphasis in original).

Notwithstanding its protestations, Vozzcom fails to explain just how the claims differ, or what distinct underlying events differentiate these claims. The only differentiating fact Vozzcom points to is that the *Elliot* claim was filed more than a year after *DaSilva*, which is not dispositive in a claims-made policy. The exclusions inherent in claims-made policies are specifically designed to avoid claims which have accrued but not yet been filed. Moreover, the express language of the policy precludes coverage for related claims arising from a wrongful occurrence, regardless of when those claims are filed in court.

Vozzcom maintains that "the only common facts" between *Teixeira, DaSilva,* and *Elliot* are "(1) the claims were filed by the same attorney, (2) the Plaintiffs all worked for Vozzcom, and (3) the claims were all for unpaid overtime compensation." (*Id.* at 16). But Vozzcom ignores many similarities between the claims. Teixeira, Da-Silva, and Elliot not only all worked for

Vozzcom, but they were employed in the same positions, as cable technicians. All three employees were non-exempt hourly or piece rate workers. All three were employed by Vozzcom during approximately the same time period. All three were allegedly denied overtime coverage in the course of their employment by Vozzcom.

This is not a case where employees from different departments within a company, who performed different tasks at different times and were paid at different pay scales, brought separate suits for FLSA violations. The only material differences between *Teixeira, DaSilva,* and *Elliot* are that the suits involve three separate individuals, and one of the claims was filed a year later than the others. If the *Teixeira, DaSilva,* and *Elliot* claims are not related, no claims by separate employees could ever be related for exclusion purposes under Great American's claims-made policy, thereby rendering useless the exclusionary clauses. *See Anderson v. Auto–Owners Ins. Co.,* 172 F.3d 767, 769 (11th Cir.1999) ("A court should read an insurance policy as a whole, and endeavor to give each provision its full meaning and operative effect.").

Vozzcom urges the Court to construe the policy in favor of coverage. And while it is true that ambiguous insurance policy provisions must be construed in favor of the insured,[4] there is simply no ambiguity in this case. The Great American policy states that a related claim is considered "made" at the date of filing of the initial claim. Here, as in the *DaSilva* case, the claim is considered made on the date the *Teixeira* claim was filed, which was before the coverage period of the Great American policy. Accordingly, coverage for the *Elliot* claim is excluded.

---

4. *See, e.g., Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non–Marine Ass'n,* 117   F.3d 1328, 1337 (11th Cir.1997).

Vozzcom also takes issue with the fact that Great American focuses on the *allegations* of the various complaints to determine whether the claims are related for coverage purposes. Vozzcom argues that although the allegations in *Teixeira*, *DaSilva*, and *Elliot* are similar, the claims in truth have many differences such that they should not be deemed related. As Great American correctly points out, however, the law in Florida is clear that an insurer's duty to defend is determined by the allegations in a compliant against an insured. *See Jones v. Florida Ins. Guar. Ass'n, Inc.*, 908 So.2d 435, 442–43 (Fla.2005) ("It is well settled that an insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage.") (citations omitted). Because the *Teixeira*, *DaSilva*, and *Elliot* complaints on their face allege closely related facts, the claims are related for purposes of determining that Great American does not have a duty to defend the *Elliot* claim under the express terms of the policy.

Great American maintains that even if the Court were to find the *Elliot* claim was not made prior to Great American's policy period and excluded on that ground, the claim would nonetheless be excluded under the Prior Notice Exclusion and the Prior Litigation Exclusion provisions of the policy. It is worth noting that under both of those exclusions, the *Elliot* claim would not be covered if it were

B. based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any **Wrongful Act or Related Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice or Claim given under any other policy of which this Policy is a renewal or replacement;

C. based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any prior and/or pending civil, criminal, administrative or investigative proceeding involving the **Company** and/or any **Insured Persons** as of the date stated in Item 7 of the Declarations, or any fact, circumstance or situation underlying or alleged in such proceeding;

(*Great American Policy* at 8) (emphasis in original). The language of these two exclusions—"based upon, arising out of, relating to, directly or indirectly resulting from or in consequence of, or in any way involving any Wrongful Act or related Wrongful Act"—is far broader than the "related act" language required to determine whether the *Elliot* claim is related to the *Teixeira* claim for claims-made coverage purposes. Under the Prior Notice and Prior Litigation Exclusions, the *Elliot* claim requires only a tenuous connection to the *Teixeira* claim in order to be excluded under the policy. Accordingly, if the *Elliot* claim is excluded under the Related Wrongful Acts exclusion, it is most certainly excluded under the Prior Notice and Prior Litigation Exclusions.

Vozzcom complains that the Prior Notice and Prior Litigation Exclusion language is "extremely broad." (*Vozzcom's Mot.* at 11). The Court agrees. The language is extremely broad, but it is also equally clear and without ambiguity. Under Florida law, the policy "must be construed in accordance with the plain language of the policy." *Siegle v. Progressive Consumers Ins. Co.*, 819 So.2d 732, 735 (Fla.2002). The plain language of the policy states that if a connection exists between a new claim and one that the employer had prior notice of, or was previously litigated, the new claim is not covered under the policy.

Vozzcom also argues that the Prior Notice and Prior Litigation Exclusions are too broad in scope. Vozzcom asserts, "[i]f Great American does intend to deny coverage whenever a party has been previously sued for unpaid overtime compensation, its exclusion must explicitly state that, and not leave an insured to discover this loophole after a loss has occurred." (*Vozzcom's Mot.* at 16). Vozzcom overstates the issue. First, the exclusions do not deny coverage for *every* overtime compensation claim: only *related* claims are excluded. Moreover, the language of the exclusionary clauses is, as noted, clear and unambiguous. As Great American points out, "[t]he fact that this conclusion necessarily requires a finding of no coverage for Vozzcom does not entitle Vozzcom to rewrite the express provisions of the policy." (Great American's Response to Vozzcom's Motion for Summary Judgement [D.E. 26] at 9).

Accordingly, the *Elliot* claim is not covered under the policy, and Great American is entitled to summary judgment as a matter of law.

### IV. CONCLUSION

In light of the foregoing, it is hereby

**ORDERED AND ADJUDGED** that

1. Great American's Motion for Summary Judgment **[D.E.21] is GRANTED.**

2. Vozzcom's Motion for Summary Judgment **[D.E. 22]** is **DENIED.**

3. This case is **CLOSED.**

4. All pending motions are **DENIED as moot.**