COURT OF APPEALS
DECISION
DATED AND FILED

August 20, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1098**

STATE OF WISCONSIN

Cir. Ct. No. 2022CV740

IN COURT OF APPEALS
DISTRICT II

SOMERSET CONDOMINIUM ASSOCIATION, INC.,

   PLAINTIFF-APPELLANT,

 V.

RC SOMERSET, LLC AND LAKESIDE LIVING, LLC,

   DEFENDANTS-RESPONDENTS,

MARTY CLESS AND STEVE GREENBERG,

   DEFENDANTS,

CANYON CUSTOM HOME BUILDERS, INC., D/B/A
CANYON DEVELOPMENT GROUP,

   INTERVENING PLAINTIFF-RESPONDENT,

ERIE INSURANCE EXCHANGE,

   INTERVENING DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Walworth County: PHILLIP A. KOSS, Judge. *Reversed and cause remanded*.

Before Neubauer, P.J., Gundrum, and Grogan, JJ.

¶1 NEUBAUER, P.J. Somerset Condominium Association, Inc. (Somerset) appeals from an order granting in part a motion for declaratory/summary judgment filed by its insurer, Erie Insurance Exchange (Erie). Erie issued a policy of insurance to Somerset containing several forms of coverage, including as relevant here a Directors and Officers (D&O) Liability Form. The circuit court concluded that a "Prior Notice" exclusion in the D&O Liability Form barred coverage for counterclaims asserted against Somerset by several parties in this case. We reverse.

¶2 The Prior Notice exclusion bars coverage for "[a]ny liability arising out of the facts alleged, or to the same or related 'wrongful acts' alleged or contained in any 'claim' which has been reported, or in any circumstances of which notice has been given, under" a prior insurance policy. We conclude that this exclusion does not bar coverage with respect to two of the counterclaims asserted against Somerset in this case—tortious interference and slander of title— because Somerset's potential liability for those counterclaims does not arise out of related "wrongful acts" alleged in a prior lawsuit filed against Somerset in which Erie had provided a defense under a different policy. Based upon our analysis and application of the exclusion, we conclude that the circuit court erred in reaching a contrary conclusion.

**BACKGROUND**

¶3      Somerset is a Wisconsin corporation that was formed in 1977 to manage a condominium property located in Lake Geneva, Wisconsin.  Under the declaration for the Somerset Condominium and an addendum thereto, certain units within the condominium were designated for multi-family residential buildings.  At various times, these units were owned by members of the Cless family or RC Somerset, LLC (RC Somerset), of which Marty Cless (Cless) is the manager.  From 1996 to 2016, the owners of these units leased them to Somerset; the lease terms specified that the units were to remain vacant and undeveloped.  In 2015, Somerset decided not to renew the lease when it expired in April 2016.

¶4      In 2017, Cless contacted Somerset about possibly purchasing the units.  Somerset's board of directors considered the proposal but ultimately decided to pass.  Two years later, in April 2019, Cless entered into agreements to sell the units to Canyon Custom Home Builders, Inc. (Canyon Home Builders).  Steve Greenberg is the President of Canyon Home Builders; the company later assigned one of the agreements to his wife, Sheri Greenberg.  The agreements were conditioned upon Canyon Home Builders obtaining approval from Somerset to build multi-family developments on the units within sixty days.  The condominium declaration gave Somerset the right to purchase Cless/RC Somerset's units on the same terms as Canyon Home Builders.  In May 2019 and April 2020, Somerset executed one-year waivers of that right.

¶5      At Somerset's May 11, 2019 annual meeting, the board of directors learned of the proposed sales and indicated that an "Architectural Committee" would review the designs for the multi-family buildings.

¶6 At the time of the proposed sales to Canyon Home Builders, Somerset had a set of Design Review Guidelines for residential buildings that it initially adopted in 1997 and later amended in 2006 and 2012. Each iteration of the guidelines provided for the creation of the committee to review and approve building plans. Between June 2019 and June 2020, Canyon Home Builders submitted to the committee multiple sets of plans for the multi-family buildings it intended to build. The committee did not approve any of the plans because, in its view, they did not conform in certain respects to the guidelines.

¶7 In August 2020, Canyon Home Builders and Sheri Greenberg filed a lawsuit against Somerset in the United States District Court for the Eastern District of Wisconsin (the Federal Lawsuit). In their complaint, Canyon Home Builders and Greenberg detailed their unsuccessful efforts to obtain Somerset's approval of their construction proposals in 2019 and 2020 and asserted three claims. First, they sought a declaratory judgment that Somerset lacked "authority to require prior review and approval of the construction of structures on any units in the Condominium," that the 2012 Design Review Guidelines are void and unenforceable, and that Canyon Home Builders and Greenberg "may proceed with the construction of multiple-family structures" on their respective units. Canyon Home Builders and Greenberg also asserted a breach of contract claim premised on Somerset's alleged breach of the duty of good faith and fair dealing in its application of the 2012 guidelines to their construction proposals. Finally, they alleged that Somerset's board had tortiously interfered with their purchase agreements with Cless/RC Somerset through, among other things, its "arbitrary, capricious and unreasonable interpretation of the 2012 Design Review Guidelines as applied to Canyon's proposed development plans." Canyon Home Builders and Greenberg alleged that the reasons Somerset gave for its denials of their design

proposals were "a pretext to conceal [Somerset]'s desire that [their units] never be developed."

¶8    Erie agreed to defend Somerset in the Federal Lawsuit under a policy it had issued to Somerset with a policy period of July 23, 2020 to July 23, 2021 (the First Erie Policy).  In February 2021, the federal court dismissed Canyon Home Builders and Greenberg's breach of contract and tortious interference claims.  In several subsequent decisions, the federal court declared "that the 2012 Design Guidelines are inapplicable to multiple-family structures" but denied Canyon Home Builders and Greenberg's request for damages in connection with that declaration.  The court also denied their request for leave to amend their complaint to add additional claims.  A final judgment was entered on July 5, 2022.

¶9    On July 13, 2022, counsel for RC Somerset wrote to Somerset to confirm that it would again waive its right to purchase the units, as it had done twice previously.  On August 12, 2022, counsel for Somerset informed RC Somerset that Somerset would be exercising its right of first refusal and option to purchase the units.  Several days later, Somerset's counsel recorded an Affidavit of Interest with respect to the units with the Walworth County Register of Deeds "to provide notice of" Somerset's impending purchase of the units.  Somerset's counsel then informed the title company involved with the putative sales between RC Somerset and Canyon Home Builders/Sheri Greenberg that Somerset had exercised its option, recorded the affidavit, and was thus "of the opinion that RC Somerset is legally unable to close on these sales."

¶10   On August 19, 2022, Canyon Home Builders and Sheri Greenberg assigned their respective rights, title, and interest in the units to Lakeside Living,

LLC (Lakeside).  RC Somerset and Lakeside proceeded to close the sales of the units.

**PROCEDURAL HISTORY**

¶11    In November 2022, Somerset filed the present case against RC Somerset, Cless, Canyon Development, Steve Greenberg, and Lakeside. Somerset's complaint recounted RC Somerset and Canyon Development's 2019 agreements for the sale of the units, Somerset's 2019 and 2020 waivers of its right to purchase the units, its exercise of the purchase option in 2022, and RC Somerset's sale of the units to Lakeside.  Somerset sought a declaratory judgment that it had "properly exercised its first right and option to purchase" in 2022 and that the sale to Lakeside was void, as well as an "[i]njunction to prevent the modification or development of the [units]."

¶12    In January 2023, Canyon Development, Steve Greenberg, and Lakeside answered Somerset's complaint and asserted five counterclaims against it.  First, they sought a declaration that Somerset's exercise of its right to purchase in 2022 was void and that it could not "assert[] any claim or interest in [the u]nits."  Second, they asserted counterclaims for intentional misrepresentation and strict liability misrepresentation based on Somerset's assertions that its design review guidelines applied to Canyon Home Builders's multi-family construction plans.  Next, they asserted a counterclaim for tortious interference based on Somerset's communicating to the title company that it did not believe RC Somerset could close the sales to Canyon Home Builders/Greenberg, which allegedly caused the title company to "refuse[] to be involved in the closing."  Finally, they asserted a counterclaim for slander of title based on Somerset's filing

of the Affidavit of Interest with the Register of Deeds. RC Somerset filed a separate answer that included the same five counterclaims.

¶13 In May 2023, Lakeside filed an amended set of counterclaims that included only the counterclaims for declaratory judgment, slander of title, and tortious interference. In addition, Canyon Home Builders was granted leave to intervene as a party and filed a complaint against Somerset asserting the counterclaims for intentional misrepresentation and strict responsibility misrepresentation.[1]

¶14 Somerset tendered its defense of the counterclaims to Erie, which agreed to provide a defense under a reservation of rights under its policy then in effect, which covered the period from July 23, 2022 to July 23, 2023 (the Second Erie Policy). Erie then intervened in the case and filed a motion for declaratory/summary judgment seeking a declaration that there was no coverage for any of the counterclaims against Somerset under the Second Erie Policy. As relevant here, Erie conceded that the D&O Liability Form, which is a "claims-made form," provided an initial grant of coverage but argued that two exclusions precluded coverage for the counterclaims. One of the exclusions, entitled "Prior Notice," bars coverage for

> Any liability arising out of the facts alleged, or to the same or related "wrongful acts" alleged or contained in any "claim" which has been reported, or in any circumstances of which notice has been given, under any policy of which this Coverage Form is a renewal or replacement.

A "wrongful act" is defined in the form as

---

[1] Somerset later amended its complaint, dropping Cless, Steve Greenberg, and Canyon Development as defendants and adding Sheri Greenberg and Canyon Home Builders.

7

> any actual or alleged error, misstatement, misleading statement, act or omission, or neglect or breach of duty by any insured but only while acting within the scope of their duties, related to the operations of the Condominium Association or Homeowners Association, as an insured.

A "claim" includes "[a] civil … proceeding against an insured that seeks damages because of a 'wrongful act' to which this insurance applies" and "[a] civil proceeding against any insured commenced by the service of a complaint or similar pleading upon such insured[.]"

¶15 The circuit court held a hearing on Erie's motion in June 2024. After hearing argument from the parties, the court granted Erie's motion, concluding that the Prior Notice exclusion in the Second Erie Policy barred coverage for the counterclaims. The court reached this conclusion based on its determination that the counterclaims were "clearly … related to wrongful acts that had previously been reported" during the policy period of the First Erie Policy. In an order entered after the hearing, the court stated that the Prior Notice exclusion "operates to bar coverage for all claims and counterclaims alleged against Somerset" and that "Erie … has no duty to defend or indemnify Somerset … for any claims or counterclaims alleged against [it] in the [case]."[2]

## DISCUSSION

### I. Standard of Review

¶16 Erie agreed to provide a defense to Somerset in this case and relied on documents and evidence outside the pleadings in support of its motion for

---

[2] The circuit court declined to grant Erie's motion with respect to another exclusion in the D&O Liability Form entitled "Dishonest or Criminal Acts" because it concluded that facts material to that exclusion were in dispute and required a jury to resolve.

summary/declaratory judgment. In such circumstances, we analyze whether it is entitled to summary judgment on the question of coverage based on the full record, not just the counterclaims. *See* **5 Walworth, LLC v. Engerman Contracting, Inc.**, 2023 WI 51, ¶13, 408 Wis. 2d 39, 992 N.W.2d 31. "Summary judgment is appropriate when there is no genuine issue of material fact and 'the moving party is entitled to [a] judgment as a matter of law.'" **Quick Charge Kiosk LLC v. Kaul**, 2020 WI 54, ¶9, 392 Wis. 2d 35, 944 N.W.2d 598 (quoting WIS. STAT. § 802.08(2) (2023-24)[3]). We review the circuit court's decision de novo. **5 Walworth**, 408 Wis. 2d 39, ¶13. We also independently interpret the terms of the Second Erie Policy. *See* **id.**

## II. Insurance Policy Interpretation Standards

¶17 "When analyzing whether an insurance policy provides coverage, we examine the terms of the policy and compare it to the facts in the record." **Id.**, ¶16. Our goal in interpreting the Second Erie Policy is "to determine and give effect to the intent of the contracting parties." *See* **American Fam. Mut. Ins. Co. v. American Girl, Inc.**, 2004 WI 2, ¶23, 268 Wis. 2d 16, 673 N.W.2d 65. We construe the language "as [it] would be understood by a reasonable person in the position of the insured." *See* **id.** "However, we do not interpret insurance policies to provide coverage for risks that the insurer did not contemplate or underwrite and for which it has not received a premium." **Id.**

¶18 Insurance policy analysis ordinarily proceeds in three steps. Our first step is usually to consider whether the insuring agreement in the D&O

---

[3] All references to the Wisconsin Statutes are to the 2023-24 version.

Liability Form provides an initial grant of coverage. *See Acuity v. Chartis Specialty Ins. Co.*, 2015 WI 28, ¶28, 361 Wis. 2d 396, 861 N.W.2d 533. Here however, we need not do so because Erie acknowledges that the insuring agreement initially covers the counterclaims. Thus, we proceed to the second step and examine whether the Prior Notice exclusion precludes coverage. *See id.* If it does, then we will consider "whether an exception to the exclusion applies to reinstate coverage." *See id.*

## III. The Prior Notice Exclusion

¶19 As noted above, the Prior Notice exclusion forecloses coverage for "[a]ny liability arising out of the facts alleged, or to the same or related 'wrongful acts' alleged or contained in any 'claim' which has been reported … under any policy of which this Coverage Form is a renewal or replacement." The proper application of this exclusion appears to present a question of first impression in Wisconsin. The parties do not identify any published Wisconsin decisions analyzing this or similar exclusions, and our research has not uncovered any. Instead, the parties rely on non-Wisconsin cases in support of their arguments.

¶20 Before turning to those cases, we start with the language of the exclusion itself, and two points that appear to be undisputed. First, there appears to be no dispute that the D&O Liability Form in the Second Erie Policy "is a renewal or replacement" of the First Erie Policy, which was in effect when the Federal Lawsuit was commenced. Nor is there any dispute that the Federal Lawsuit is a "claim" under the D&O Coverage Form that was reported to Erie under the First Erie Policy.

¶21 Keeping our focus on the language of the exclusion, the crux of the parties' dispute concerns whether, in this case, Somerset's potential "liability

10

aris[es] out of … the same or related 'wrongful acts' alleged or contained in" the Federal Lawsuit.[4]  In that action, Canyon Home Builders and Sheri Greenberg asserted three claims against Somerset—breach of contract, tortious interference, and a claim for declaratory judgment.  The "wrongful acts" on which those claims were based were Somerset's refusals in 2019 and 2020 to approve Canyon Home Builders's plans for multi-family residential buildings because they did not comply with Somerset's 2012 Design Review Guidelines, refusals which prevented Canyon Home Builders from finalizing its acquisition of the condominium units from Cless/RC Somerset.[5]

¶22    Somerset argues that its potential liability for two of the counterclaims asserted against it in the present case—tortious interference and slander of title—does not arise out of related wrongful acts alleged in the Federal Lawsuit.  This is so, it contends, because those counterclaims are based on acts that occurred in August 2022 after a final judgment was entered in the Federal

---

[4] The parties recognize that Somerset's potential liability in the present case does not arise out of the "same" wrongful acts that were at issue in the Federal Lawsuit.  Thus, the issue here is whether Somerset's potential liability arises from "related" wrongful acts that were at issue in the Federal Lawsuit.

[5] Somerset argues that its refusals to approve Canyon Home Builders's plans were not "wrongful acts" for the purpose of the Prior Notice exclusion because the court in the Federal Lawsuit "determined th[at Somerset] had done nothing wrong" in sticking to its position that the 2012 Design Review Guidelines applied to Canyon Home Builders's plans and precluded multi-family residential buildings.  For support, Somerset cites our per curiam decision in *Braketown USA, Inc. v. Markel Insurance Co.*, No. 2021AP1591, unpublished slip op. (WI App Aug. 29, 2023).  We reject Somerset's argument for two reasons.  First, a "wrongful act" under the *D&O Liability Form* is "any actual or *alleged* error, … act or omission … by any insured … while acting within the scope of their duties[.]"  (Emphasis added.)  Canyon Home Builders and Sheri Greenberg's allegation in the Federal Lawsuit that Somerset's refusals were "arbitrary, capricious and unreasonable" is sufficient to satisfy the policy definition of a "wrongful act."  Second, Somerset's reliance on *Braketown* is improper; parties may not cite per curiam decisions as precedent or persuasive authority under our rules.  *See* WIS. STAT. RULE 809.23(3).

11

Lawsuit. Specifically, the tortious interference counterclaim is based on Somerset's attempt to exercise its right of first refusal and option to purchase the units, and the slander of title counterclaim is based on Somerset's recording of an Affidavit of Interest with respect to the units with the Walworth County Register of Deeds. In addition to the fact that these acts occurred after a final judgment was entered in the Federal Lawsuit, Somerset emphasizes that the counterclaims have been asserted by two parties—Lakeside and RC Somerset—that were not parties in the Federal Lawsuit.

¶23 Erie disagrees, arguing that Somerset's potential liability for the tortious interference and slander of title counterclaims in the present case arises out of related wrongful acts that were alleged in the Federal Lawsuit. Erie contends that Somerset's overarching goal since it first learned of Canyon Home Builders's interest in purchasing the units in 2019 has been to keep the units "vacant and undeveloped." It argues that Somerset's potential liability for its attempt to exercise its right of first refusal and recording of the Affidavit of Interest in 2022 arises out of "related 'wrongful acts'"—Somerset's prior withholding of approval of Canyon Home Builders's multi-family design plans in 2019 and 2020—because they were undertaken in furtherance of that goal. As Erie puts it, "[w]hile [Somerset]'s methods changed, the goal was the same: to prevent anyone from developing the [units]." It also contends that the Prior Notice exclusion can apply to claims arising out of related wrongful acts even if the claims are brought by different parties.

¶24 Absent published on-point authority in Wisconsin, we turn to several non-Wisconsin cases that have applied similar exclusions. In *LaValley v. Virginia Surety Co.*, 85 F. Supp. 2d 740 (N.D. Ohio 2000), LaValley, a lawyer, sought insurance coverage after settling a malpractice lawsuit that arose out of his

involvement in a company in which he was also a shareholder. Virginia Surety, the insurer, declined coverage because of a prior notice exclusion in its policy, which barred coverage for "any claim arising from any circumstance of which notice has been given under any policy in effect" before Virginia Surety's policy. *Id.* at 742-43. (Although the *LaValley* case involved the second phrase of the Prior Notice exclusion at issue here, the analysis provides useful guidance.) Virginia Surety argued that this exclusion barred coverage because LaValley had been sued years before its policy went into effect by another shareholder, who alleged that LaValley had breached certain duties and misappropriated corporate opportunities while acting as the company's lawyer. *Id.*

¶25    The court agreed with Virginia Surety that the exclusion applied. *Id.* at 746-47. It construed the exclusion to be satisfied if two requirements were met: "1) a claim against the insured arises out of circumstances that predate the exclusion of the insured's current policy, and 2) those circumstances somehow were brought to the attention of a former insurer in accordance with an earlier policy." *Id.* at 744. Both conditions were satisfied because the underlying lawsuit arose out of circumstances that had occurred years before Virginia Surety's policy had gone into effect and about which LaValley had notified his prior insurer. *Id.* at 747. Moreover, the two claims "arose from the same general circumstances, namely, LaValley's relationship with the [company's] shareholders." *Id.*

¶26    A similar prior notice exclusion was determined to bar coverage in *Zunenshine v. Executive Risk Indemnity, Inc.*, No. 97 Civ. 5525, 1998 WL 483475 (S.D.N.Y. Aug. 17, 1998), *aff'd*, 1999 WL 464988 (2d Cir. June 29, 1999). There, the exclusion barred coverage for losses in any way "resulting from … any fact, circumstance, situation, transaction, event or Wrongful Act which, before May 24, 1996, was the subject of any notice given under any" other similar

insurance policy.  ***Zunenshine***, 1998 WL 483475, at *1.  Zunenshine and other directors and officers of SLM International, Inc. sought coverage from their insurer, Executive Risk, after settling a lawsuit filed in May 1997 by a group of investors who alleged that they "had negligently misrepresented SLM's financial condition" in a memorandum distributed in 1993, months before the investors purchased unsecured notes from SLM.  ***Id.*** at *2.  Executive Risk argued that the prior notice exclusion precluded coverage because some of the directors and officers had been sued in 1994 by a group of former shareholders for making other allegedly false and misleading public statements about the company's financial condition in 1993 and 1994.  ***Id.***

¶27     The district court agreed, concluding that although the lawsuits concerned different allegedly false statements made in different forms, the lawsuits shared "a strong factual nexus."  ***Id.*** at *5.  On appeal, the Second Circuit affirmed, explaining that the prior notice exclusion applied because similar misstatements were at issue in both cases, and thus "the Shareholders' lawsuit should have put plaintiffs on notice of the potential for future claims by the Noteholders."  ***Zunenshine***, 1999 WL 464988, at *2.

¶28     In contrast to ***LaValley*** and ***Zunenshine***, we conclude that the Prior Notice exclusion does not bar coverage for Somerset's potential liability for tortious interference and slander of title in the present case.  We reach this conclusion even accepting as true Erie's supposition that Somerset's actions at issue in the Federal Lawsuit and the present case were undertaken in furtherance of a common goal.  Under the plain terms of the exclusion, coverage is barred only if the insured's liability "arise[es] out of … related 'wrongful acts' alleged or contained in" a previously reported claim.  Here, that is not the case: Somerset's potential liability does not arise out of "related 'wrongful acts' alleged or

contained in" the Federal Lawsuit. Somerset's liability in the Federal Lawsuit arose out of its refusals in 2019 and 2020 to approve Canyon's plans for multi-family residential buildings. Its potential liability for tortious interference and slander of title in the present case does not arise out of those refusals. Instead, its potential liability arises out of conduct that occurred years later—its attempt to exercise its right of first refusal and filing of the Affidavit of Interest in 2022.

¶29 *LaValley* and *Zunenshine* involved situations in which the claims in the separate lawsuits arose out of acts that occurred during a prior policy period. That is not the case here: the acts which are the basis of the tortious interference and slander of title counterclaims did not occur during the same prior policy period as the acts out of which the claims in the Federal Lawsuit arose. While Erie argues those acts are "related" by a common goal, the policy exclusion only applies where the potential liability in the underlying claim arises out of those prior wrongful acts.

¶30 In addition, we note that the present case features different parties from the Federal Lawsuit. The counterclaims in the present case are brought by two parties, Lakeside and RC Somerset, that were not parties in the Federal Lawsuit. While Erie is correct that the Prior Notice exclusion does not require that the lineup of parties in the two actions be identical, the presence of different parties in a subsequent lawsuit is one factor that weighs against a determination of relatedness. In addition, though both lawsuits pertain generally to the same condominium units, "they involve different causes of action, legal duties allegedly breached, types of damages, … alleged victims" and "different method[s] or modus operandi." *See **RLI Ins. Co. v. OutsideIn Architecture, LLC***, 692 F. Supp. 3d 1077, 1102 (M.D. Fla. 2023).

¶31     In its oral ruling, the circuit court relied on the Court of Appeals for the Seventh Circuit's decision in *Hanover Insurance Co. v. R.W. Dunteman Co.*, 51 F.4th 779 (7th Cir. 2022).  We do not believe that that case compels a no-coverage determination here.  In *Dunteman*, the estate of the mother and minority shareholder in several family-owned construction businesses filed a lawsuit in 2017 against one of the businesses seeking a declaration that a prior attempt to dilute her ownership interest was invalid.  *Id.* at 783.  Approximately one year later, the estate filed an amended complaint that added another of the businesses and the mother's sons as defendants and alleged that the sons, in their capacities as officers and directors of the businesses, were responsible for her reduction in shares.  *Id.*  The amended complaint also detailed other events which the court of appeals described "as a broader scheme by the [sons] to freeze out [the mother] (and later her estate) as a minority shareholder in" the businesses.  *Id.* The sons and the businesses notified their insurer, Hanover, of the lawsuit for the first time after the amended complaint was filed, but Hanover denied coverage under its claims-made policy because the lawsuit had been filed (but not reported to Hanover) during a prior policy period.  *Id.* at 783-84.  Hanover's policy treated "Related Wrongful Acts" and "Related Claims" as one wrongful act or claim and deemed them to occur at the time of the earliest wrongful act or claim.  *Id.* at 784.

¶32     The district court in *Dunteman* concluded that the insureds had not timely notified it of the estate's lawsuit during the 2017 policy period based on its determination that the additional allegations and claims in the amended complaint filed in 2018 were "Related Wrongful Acts" and "Related Claims."  *Id.* at 784-85. On appeal, the Court of Appeals for the Seventh Circuit agreed, explaining that the new allegations and claims in the amended complaint were related to the initial

16

complaint "because they collectively concern[ed] the insureds' wrongful reduction of [the mother]'s ownership interest in the family business." *Id.* at 786.

¶33 *Dunteman* is materially distinguishable from the present case because the facts underlying the claims added in the amended complaint in that case were grounded in events that occurred before the lawsuit was initially commenced. The present case, in contrast, involves an initial lawsuit arising out of events in 2019 and 2020 and a subsequent lawsuit containing claims giving rise to potential liability arising out of acts that occurred several years later. This difference is material to the outcome here because the Prior Notice exclusion only applies to liability that arises out of the same or related acts that were previously reported to Erie.

¶34 Finally, we note that our conclusion construes the prior notice exclusion in the context of the D&O Liability Form as a whole and aligns with the type of coverage the form affords. *See Pantropic Power Prods., Inc. v. Fireman's Fund Ins. Co.*, 141 F. Supp. 2d 1366, 1371 (S.D. Fla. 2001) ("The relatedness of the claims must be considered in the context of the type of insurance at issue."). The D&O Liability Form is a "claims made" form of coverage. Claims made policies "are intended by insurers to avoid the hazard of an indefinite future: Once the policy period has expired, the book can be closed on everything except then-pending claims." *HR Acquisition I Corp. v. Twin City Fire Ins. Co.*, 547 F.3d 1309, 1315 (11th Cir. 2008) (quoting *Ameriwood Indus. Int'l Corp. v. American Cas. Co.*, 840 F. Supp. 1143, 1148 (W.D. Mich. 1993)).

¶35 But as the *HR Acquisition* court recognized, "an insurer incurs a risk with this kind of policy: liability for a claim that has been brewing and was ripe to erupt before the policy period, but is asserted only after the policy period begins."

17

*HR Acquisition*, 547 F.3d at 1315 (quoting *Ameriwood*, 840 F. Supp. at 1149); *see also LaValley* 85 F. Supp. 2d at 744 ("The problem with claims made policies, from an insurer's perspective, is that insureds might try to obtain coverage for claims they know or are reasonably certain will be made against them in the near future."). "For this reason, claims made policies generally include a number of endorsements and exclusions intended to limit this front end risk by cutting off liability for claims ready, but not yet made, at the start of the policy period." *HR Acquisition*, 547 F.3d at 1315 (quoting *Ameriwood*, 840 F. Supp. at 1149). As another court explained, "[t]he exclusions inherent in claims-made policies are specifically designed to avoid claims which have accrued but not yet been filed." *Vozzcom, Inc. v. Great Am. Ins. Co. of N.Y.*, 666 F. Supp. 2d 1332, 1339 (S.D. Fla. 2009)), *aff'd*, 374 Fed. Appx. 906 (11th Cir. 2010) (per curiam).

¶36 The counterclaims for tortious interference and slander of title in the present case were based on events that did not occur until after the policy period for the Second Erie Policy began. The Second Erie Policy took effect on July 23, 2022, but Somerset's conduct which is the gravamen of those counterclaims did not occur until August 2022. We do not see how those counterclaims could have been "brewing," "ripe to erupt," or "ready, but not yet made" *before* the Second Erie Policy took effect. *See HR Acquisition*, 547 F.3d at 1315 (quoting *Ameriwood*, 840 F. Supp. at 1149). Nothing in the record suggests that Somerset knew, or was reasonably certain, that the counterclaims would be filed against it before the Second Erie Policy's policy period began. *See LaValley*, 85 F. Supp. 2d at 744. And because the conduct underlying those counterclaims did not occur until after the policy period began, the counterclaims did not accrue before the Second Erie Policy went into effect. *See Vozzcom*, 666 F. Supp. 2d at 1339; *see also Hennekens v. Hoerl*, 160 Wis. 2d 144, 152, 465 N.W.2d 812 (1991)

(claim does not accrue until injured party knows or should know of injury, cause of injury, and identity of responsible party).

## CONCLUSION

¶37 For the foregoing reasons, we conclude that the Prior Notice exclusion in the Second Erie Policy does not bar coverage with respect to the tortious interference and slander of title counterclaims. Somerset's potential liability with respect to those counterclaims does not "aris[e] out of the facts alleged, or … the same or related 'wrongful acts' alleged or contained in" the Federal Lawsuit and thus does not fall within the scope of the exclusion. Because Erie may have an obligation to indemnify Somerset if it is found liable with respect to those counterclaims, it must continue to defend Somerset in this case. *See Steadfast Ins. Co. v. Greenwich Ins. Co.*, 2019 WI 6, ¶28, 385 Wis. 2d 213, 922 N.W.2d 71 ("[W]hen an insurance policy provides potential coverage for one claim alleged in a lawsuit, the insurer must defend the entire suit[.]").

*By the Court.*—Order reversed and cause remanded.

Recommended for publication in the official reports.